Johnson, J.
All the questions, that have been made in this case', arise out of the following clause in the last will of Humphrey Summers, deceased, to wit. “ My will is, that my negroes be kept, and employed, on my plantation, at the discretion of my executors, hereinafter named, or the survivors, or survivor, of them, for the sole use, benefit, and advantage, of my said three daughters, Ann Olney Summers, Susannah Summers, and Mary Summers, until my said daughter, Ann Olney, shall arrive at the age of sixteen years; when it is my will, and I do hereby direct, my said negroes to be divided, by my said executors, into three equal parts, or shares, respect being had to the real value thereof: the use of one third part, or share, of which *300 said negroes, I give, and bequeath, unto my said daughter, Ann 01-ney gummergj during her natural life, and her heirs lawfully begotten, forever; and the other remaining two third parts, or shares, of my said negroegj to jje jtept together, and employed to the best advantage, by my said executors, for the sole use and benefit of my other two daughters, Susannah Summers, and Mary Summers, until my said daughter Susannah shall attain the age of sixteen years ; when it is my will, that the said remaining two third parts, or shares, of my said negroes, be equally divided betwixt my said two daughters, Su. sannah, and Mary Summers, share and share alike. But in case it shall happen, that either of my said three daughters, Ann Olney Summers, Susannah Summers, and Mary Summers, shall die, or depart this life, without leaving issue lawfully begotten, then, and in such case, it is my will, and I do hereby give, devise, and bequeath, that part, or share, of my estate, real and personal, herein before given, devised, and bequeathed, to such my daughter, or daughters, so dying, unto the survivors, or survivor of them, and to their respective heirs lawfully begotten, forever.”
David Deas, the complainants’ testator, intermarried with Mary Summers, the daughter, and during the coverture, reduced into his possession, the slaves allotted to her, under the direct bequest of one third part. He afterwards died, leaving a will, of which his said wife qualified as executrix; and this suit was originally instituted against her, on behalf of creditors, for an account of her administration, and to subject the slaves derived from her father’s estate, to the payment of the debts of her husband. Mrs. Deas has died since the commencement of the suit; and administration, de bonis non, of her husband’s estate, having been granted to Charles Izard Manigault, one of the complainants, the suit has been revived by him against the administrator of Mrs. Deas : and the question as to the liability of these slaves to the debts of Mr. Deas, is the matter now in issue. There can be no doubt, but that the marital rights of Mr. Deas vested in him, the whole interest which was vested in the wife; and what that interest was, is the present subject of controversy. The creditors insist, that she took an absolute, and unconditional property in these slaves; and that this interest vested in him, and was liable, to the whole extent, to the payment of his debts : whilst on the other hand, it is contended, that Mrs. Deas, took only a life estate, with a limitation over to her children, as purchasers; and consequently, that the rights of the creditors could only be enforced, subject to this limitation.
If the clause of the will, above referred to, be taken up, and dissected, with a view to ascertain its meaning, according to the terms used, it will be found to contain three distinct, independent, and substantive provisions. The first, gives to Ann Olney Summers, during her natural life, and the heirs of her body, lawfully begotten, forever, one third part of the testator’s slaves. The second, directs, that when Susannah Summers shall arrive at the age of sixteen years, the remaining two thirds “ shall be equally divided betwixt” Susannah, and Mary Summers, “ share and share alike,” without any restriction, condition, or limitation. The third, and last, limits *301 over the respective portions of .each, to the survivor, or survivors of them, in the event of their “ dying without leaving issue, lawfully begotten,” and to their respective heirs, lawfully begotten, forever, by way of cross remainders.
The second provision, according to this division, contains, it will be remarked, no direct gift, or bequest, to Susannah, and Mary Summers, of the portions, allotted to them : but supplying what is the necessary inference from the whole context of the will, and from the direction, that the remaining two thirds of the slaves, shall be equally divided betwixt them ; and construing this as an independent provision, the daughter Mary took an absolute property, iu her portion of the slaves. It is conceded, that this consequence necessarily results from this mode of construction; but it is contended, and the argument of the counsel opposed to the motion, has been principally directed to the establishment of these positions: first, that Ann Olney Summers took only a life estate, in her portion of the negroes, with a limitation over to the heirs of her body, lawfully begotten, and, if she died without leaving issue, then over to her surviving sisters ; secondly, that the dispositions of the will were, according to legal construction, the same in respect to all the daughters ; and thirdly, that under the limitation over to the survivor, and the heirs of her body, on a dying without “ leaving issue lawfully begotten,” the issue took as purchasers, and consequently that Mary Summers, took only a life estate. I shall not undertake to follow the counsel opposed to this motion, through all the cases, and au. thorities, which have been put in requisition, and which have been brought to bear, with great force and propriety, on these questions. The case, itself, appears to me to fall within a very narrow compass, and its solution, to depend upon a few well settled principles; the whole difficulty consisting in their application to particular circumstances, and to this I shall chiefly direct my attention.
And first, with respect to the interest, which Ann Olney Summers took under this bequest. In considering this question, in reference to the direct bequest to Ann Olney Summers, it will be observed, that there is no direct limitation over to the heirs of her body ; but the bequest is, in general terms, to her, and the heirs of her body, lawfully begotten, forever. The words used in this bequest, are precisely those which, according to their legal definition, constitute an estate tail, in relation to real estate ; and the authorities all agree, that a limitation over of a personal chattel, in terms creating an estate tail, is void, and that the whole vests in the first taker. According to this rule, Ann Olney Summers, took an absolute estate in her portion of the negroes. But I regard the determination of this question as wholly unnecessary to the decision of the case under consideration. Let it be conceded, that Ann Olney Summers took only a life estate in the slaves bequeathed to her, with a good limitation over to her issue, and in the event of her dying without leaving issue, then over to Susannah, and Mary Summers ; and yet it does not follow, that Mary Summers took no greater estate in those bequeathed to her.
In the direct bequest to Ann Olnoy Summers, the gift is to her, *302 and die heirs of her body, forever. In the direct bequest fo Setsannah, and Mary Summers, there is no restriction, condition, or imitation, whatsoever, except in relation to the survivorship, the effect of which will more properly fall under the consideration of the third proposition ; and the conclusion, that they took the same estate, is attempted to be sustained on the rule of construction, founded on intention, conceding that it is in violation of the strict grammatipal construction. The foundation of this argument, is, that the legatees all stood in the same relation to the testator, and that they were all infauts ; from which it was inferred, that there was no motive for any distinction amongst them : and it is then urged, that the bequests are iu the same clause, and that with respect to every thing else, the legatees are put upon a perfect equality ; and hence it is concluded, that the intention of the testator, must have been the same with respect to all. If a deduction from this hypothesis were to prevail, I should conclude, very clearly, that the bequest to Ann Olney Summers, should conform to the bequests to Susannah and Mary Summers, rather than that theirs should' be conformed to hers. The bequest to them disposed of two thirds of the estate, and embraced two thirds of the legatees; and if it-be true, that the major always includes the minor, or that in things inseparable, the greater controls the less, then my conclusion is correct. The rules of interpretation are founded in good sense, and' are calculated to meet all the variety of circumstances, incident to the framing of wills, inops concilii ; and to effect an obvious intention, they permit the substitution of one word for another, the transposition of words, and sentences, and the violation of strict grammatical construction : one part of a will, may be construed by another part; and, in short, the canons of construction are so latitudinary, that almost every rule yields to the manifest intention. But we are not permitted to give an effect to a will, contrary to the plain, and obvious import of the terms used by the testator; and broad as the rule is, we are prohibited from making a will for him.
If speculations on the subject of intention were admissible, I should probably arrive at the conclusion, to which this argument leads. Ignorant of the feelings, which might have operated on the-testator, I am ready to confess, that I can see no reason, why he should have made any distinction between these children. But we' are forbidden by the rules of law to indulge in conjecture. The testator’s power of disposition over his property is unlimited. If he will, he may indulge his partialities, and his prejudices, and exercise wisdom, or folly, in the disposition of his estate. There is no restraint upon his framing his will, even upon fanciful speculations^ and remote probabilities; and every one who has had an opportu. nity of observing, will readily admit, that they are sometimes sufficiently visionary. Possessing then, as the testator did, the absolute power of disposition, we are not permitted to speculate as to-his intention ; but are bound to give effect to his will, according to the plain, obvious, and legal import of the terms, in which he has expressed it. And judging of the bequest to Susannah, and Mary Summers, according to this rule, it will not, I think, be seriously *303 questioned, that it imports a direct, and absolute gift, subject only to a limitation over to the survivor, in the event of a dying without issue living at the time of their death. The effect of this limitation I will now proceed to consider. '
If the clause in question be read according to the foregoing conelusions, and in connexion with the concession, that it contained a good limitation over to the issue’of Ann Olney Summers, it will be found to contain the following dispositions : first, of one third part to Ann Olney Summers, for life, with remainder to her issue living at the time of her death ; secondly, the remaining two thirds, to be equally divided between Susannah, and Mary Summers, without restriction, or limitation ; and thirdly, in the event of a dying without issue, remainder over to the survivor, or survivors, and their issue, in cross remainder. Mary Summers, afterwards Mrs. Deas, died pending this suit, leaving issue ; and the question now remaining to be discussed, is, whether the issue take under this limitation, or whether the slaves bequeathed to Mrs. Deas, are assets, for the payment of the debts of David Deas.
The solution of this question, does not, as has been sometimes supposed, depend on arbitrary rules, but on rules founded in reason, and such as are best calculated to effectuate the intention of the testator. Amongst these is found the well settled rule, that issue cannot take as purchasers by implication ; of which the case under consideration, will furnish a good illustration. The testator bequeaths to his daughter Mary, certain slaves, and if she die without leaving issue, then they are given over to her surviving sisters. Now here is no direct provision for the issue; and it may be asked, why they were introduced. The answer appears to me obvious. They were introduced, as marking the quantity of the estate, which their mother took in the slaves, and the event upon which they were, or were not, to go over to the survivor ; or, as it is better expressed, in the quotation of the counsel from Cujacius, they are mentioned not for their own sakes, but for the sake of the remainder over: and it would be a violation of the intention of the testator, to give them any thing as against their parent. But the case of Carr v. Porter, 1 M’C. Ch. 60, is conclusive of the question. These are words of limitation, and not of purchase, and the issue are not intitled to take. The limitation over to the “ survivor, or survivors, and to their respective heirs, lawfully begotten,” like the bequest to the heirs of Ann Olney Summers, create an estate tail; and on that account, is void as to the personal estate, so far as it operates as a bequest to the heirs. Besides which, it could only operate in the event of the estate going over to the survivor; and that event has not happened, and with regard to Mrs. Deas, can never happen, she having died leaving issue.
It is therefore ordered, decreed, and adjudged, that the decree of Chancellor Thompson be wholly reversed: and that the defendants do account to the complainant, Charles Izard Manigault, administrator of David Deas, for the slaves bequeathed by the late Humphrey Summers, to his daughter, Mary Summers, and deliver such of the slaves as may be in their possession, to the said Charles Iz *304 ar(^ Manigault. And it is further ordered, that the slaves be sold by the said Charles Izard Manigault, and that he administer the Procee<^s °f the said sale, and the other assets of the said David Deas : and that the judgment creditors, mentioned in the schedule filed with the master’s report, be paid according to their priority ; they contributing rateably to the expences of this suit. It is further ordered, that the defendant, Charles Rutledge Holmes, aa administrator of Mary Deas, do pay to the said Charles Izard Manigault, the amount due to the estate of David Deas, on account of her administration as executrix, or that he account before the mas. ter, for her estate. And it is lastly ordered, that the costs of this suit be paid out of the estate of David Deas.
II. S. Legare, and T. S. Grimke, for the motion.
King, and Harper, contra.
Nott, J., and Colcock, J., concurred.

Decree reversed.